UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONALD CONLEY, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 23-860 |
| TANGIPAHOA PARISH JAIL, ET AL. | * | SECTION "M" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Donald Conley, Jr. filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Tangipahoa Parish Jail, Tangipahoa Parish, Sheriff Daniel Edwards, and Parish President Robbie Miller, each in an individual and official capacity.  ECF No. 9, at 3.  This matter was referred to the undersigned magistrate judge for a Report and Recommendation.  28 U.S.C. § 636(b)(1)(B); E.D. La. L.R. 73.2(A).

Having considered the record, including Plaintiff's complaint, his § 1983 fact statement, *Spears* hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

## I.  BACKGROUND

 Plaintiff Conley, an inmate at Tangipahoa Parish Jail ("TPJ"), filed this *pro se* prisoner civil rights suit under 42 U.S.C. § 1983 against Defendants Tangipahoa Parish Jail ("TPJ"), Tangipahoa Parish, Sheriff Daniel Edwards, and Parish President Robbie Miller challenging the conditions of his confinement.  ECF No. 9 ¶ III(B) at 3,  He seeks $2,000,000 in damages for "having to live in these conditions."  *Id.* at ¶ V at 4.  The court ordered Conley to provide additional information and held a *Spears* hearing after reviewing his responses.  *See* ECF Nos. 11-12, 15, 17.

### A.  Factual Allegations in the Complaint (ECF No. 9)

Conley alleges that his living quarters (the "Medical Chapel") have flying gnats and mold, which have caused health problems that jeopardize his health.  ECF No. 9 ¶ IV at 3.   Conley also

states that there are roaches on his food tray, and it is hard to eat because gnats get on his food. *Id*. Conley asserts that he has notified the guards and the head nurse about these issues through administrative grievances and letters to the health and hospitals office in Baton Rouge. *Id*. Conley also notified Sergeant Stevens about the mold and roaches, alleging that Sgt. Stevens  even saw the roaches from food trays run across the floor. *Id*.

**B.  Reply to the Court's § 1983 Response Order (ECF No. 12)**

In his response, Conley adds "Head Warden of the Tangipahoa Parish Jail" to his list of those who violated his rights. ECF No. 12, ¶1, at 1. Conley clarifies that he was housed in the Chapel from 2021 to 2023 after an August 17, 2022 conviction. *Id*. at ¶¶2-3. He reiterates that the whole jail has mold, particularly on the walls and around the baseboards, which he contends caused colds and breathing problems. *Id*. at ¶3. He also complains that roaches jump from the food trays and inmates are bitten by flying gnats because the jail does not collect trash daily.

Conley also claims that he has asked for bibles but was told to ask to use the law library, and those requests were denied. *Id*. at 2.

He also claims that he had to sleep on a piece of mat on the when he arrived at the jail. He was given a stack of papers to sign when he arrived but was not told what he was signing. The papers indicate that he received a mat, slippers, two changes of clothes, soap, and tissues. *Id*.

**C.  *Spears* Hearing Testimony**

On September 6, 2023, I conducted a phone conference with Conley. ECF No. 17. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. The conference was electronically recorded.

1. **Conditions of Confinement**

   a. **Gnats**

   During the hearing, Conley testified that he slept in the Medical Chapel for approximately two years, which was infested with gnats the entire time.  He had to fight off gnats while he ate and frequently got bitten.  As a result of gnat bites, Conley sought medical treatment multiple times.  He requested antibacterial ointment, which a nurse provided.  He did not escalate his medical treatment beyond antibiotic ointment.  Conley reported this "ongoing issue" several times, verbally informing the head nurse, Sgt. Stevens, and another guard called "Leprechaun."[1]  He also filed administrative grievances and reported the issue to the Louisiana Department of Health and Hospitals and the ACLU.

   b. **Mold**

   Conley testified that there was mold on the walls above his bunk in the Medical Chapel, on the walls and floors in the "B-Bunk," and in the showers in both dorms.  He spent the majority of his time housed in the chapel and only stayed in the B-Bunk for about eight weeks.  When he reported the mold, the facility treated the Medical Chapel walls with bleach on two occasions, during which time the inmates were sent outside for 30 minutes.  In the B-Bunk, workers occasionally bleached the showers.  The mold in the Medical Chapel showers was not as bad as the mold in the B-Bunk showers.  While Conley was housed in B-Bunk, the showers were bleached once.  Although the mold disappeared after the bleach treatment, it eventually grew back.

   Conley testified that a jail maintenance worker told him that the mold developed from a roof leak.

---

[1] Conley could not recall the guard's real name and the guard no longer works at TPJ.

Conley contends that this mold exposure has caused health problems, including a consistent cough and immune deficiencies that he did not have before being incarcerated. He takes vitamin C and iron pills to boost his immune system, which he believes were prescribed because of mold exposure. He has not sought respiratory therapy or any other treatment for these conditions.

### c.  Roaches and Trash Collection

Conley testified that he saw roaches on food trays in the Medical Chapel in February of 2023. In January 2023, Conley saw roaches leap off the cart and onto the floor. Conley indicated that garbage was not picked up from the medical chapel at the frequency mandated in TPJ's policy. Trash was supposed to be collected on Mondays, Wednesdays, and Fridays, but sometimes trash was collected just once a week. The trash collectors provided Conley with "bleach," which he believed was only ammonia water, once a week. He did not receive any other cleaning supplies. Conley asked a nurse to have someone take the trash out because it was an ongoing problem.

### d.  Sleeping Arrangements

When Conley arrived at TPJ, the facility was at capacity, so he had to wait two months to be assigned to a bunk. In the meantime, he slept in a two-person cell, which was sometimes shared by three or four people. He had access to a restroom at all times. As all of the beds in TPJ were taken by other inmates, Conley either slept on a piece of mat on a metal bunk or on the floor. To keep his head from hitting the floor, he rolled the mat up and used it as a pillow. Conley testified that the jail was overcrowded, housing over 700 inmates despite its 500 inmate capacity.

### 2.  Request for Bible and Law Library Access

Conley also testified that he was not provided a bible despite multiple requests. When he asked Sgt. Shields for a bible, the sergeant told him that jailhouse policy prohibits the supply of bibles to inmates. Conley asked another sergeant and got the same reply. He asked if he could

have someone outside of the jail send him a bible and was told that likewise violated policy. Conley also asked if his father could visit and bring him a bible but was told his father could not visit due to COVID.  Conley requested a bible from the inmate who runs TPJ's law library and was again denied.

Conley indicated that inmates could not go into the law library unless placed there by jail personnel.  If he needed information, he had to request same from the inmate who runs the library, who would make rounds to the dorms and make copies of paperwork on request.  Conley could not go into the actual library and was not given books, magazines, or any other reading material. Conley did not have any pending civil or criminal proceedings for which he was seeking library access when he was denied an in-person visit to the library.

### 3. Admission Documents and Supplies

Conley testified that he signed a TPJ admission document indicating that he received supplies that he did not, in fact, receive.  Although the form indicated that he would be provided a change of clothes, including a second pair of pants, he never received same, so he had to purchase jogger pants.  The jail did provide a towel and a shirt that was eventually thrown out and replaced upon request.

### 4. Defendants

Conley testified that he named TPJ, Tangipahoa Parish, Sheriff Edwards, Parish President Miller, and Warden Martin[2]  because they were the "overseers."  He never spoke with Warden Martin about his issues because the warden was not accessible to him.  Nor did Conley speak with Sheriff Edwards or Parish President Miller.

---

[2] Plaintiff named Warden Martin as a Defendant in his Show Cause Response.  ECF No. 12.

**5. Grievances**

Conley filed administrative grievances at a kiosk and had to wait for responses. He filed two grievances about gnats, two about mold, one about trash, one about lack of access to a bible, and one about lack of access to the law library. He could not file a grievance for roaches because he could only file grievances "every so often." Conley testified that he recalls getting only one response and there was no appeal process.

## II.    LEGAL STANDARDS

As a prisoner seeking redress from an officer or employee of a governmental entity, Conley's Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] Because he is proceeding *in forma pauperis*, the Complaint is also subject to screening under § 1915(e)(2). Both §§ 1915(e)(2)(B) and 1915A(b) provide for *sua sponte* dismissal of a complaint, or any portion thereof, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

### A.    Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[4] A claim is frivolous if it "lacks an arguable basis in law or fact."[5] A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[6] A factually frivolous claim alleges only

---

[3] *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam).
[4] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F. 3d at 579-80.
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citation omitted). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.(Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[6] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[7] A court may not dismiss a claim simply because the facts are "unlikely."[8]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[9] The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[10] The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[11]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[12] Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[13]

---

[7] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).
[8] *Id.*
[9] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[10] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).
[11] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).
[12] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).
[13] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. PROC. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[14]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[15]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[16]

**B.  The *Spears* Hearing**

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[17]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[18]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[19] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[20]  The testimony from the *Spears* hearing will

---

[14] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).

[15] *Id*.

[16] *Id*.

[17] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[18] *Id*.

[19] *Davis*, 157 F.3d at 1005–06.

[20] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990); *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (explaining that the primary means that have evolved for remedying a prisoner's pleadings are a *Spears* hearings or questionnaires that permits the prisoner to bring into focus the factual and legal bases of his claims) (cleaned up); *see also Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *1 & n.3 (5th Cir. Sept. 22, 2023) (unreported) (stating that a *Spears* hearing is an "evidentiary hearing in the nature of a FED. R. CIV. P. 12(e) motion for more definite statement) *Jarvis v. Hall*, No. 22-60098, 2023 WL 3818377, at *2 & n.3 (5th Cir. June 5, 2023) (unreported) (noting that district courts usually grant *pro se* plaintiffs an opportunity to remedy perceived errors in complaints through a "questionnaire or in a Spears dialog." (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)).

supersede the allegations of the plaintiff's complaint.[21]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[22]

The court may make only limited credibility determinations in a *Spears* hearing and may consider and rely on documents as additional evidence if they are properly identified, authentic, and reliable.[23]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[24]

## III.    APPLICABLE LAW AND ANALYSIS

### A.    Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[25]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[26]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;

(2)    that occurred under color of state law; and

(3)    was caused by a state actor.[27]

---

[21] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[22] *Spears*, 766 F.2d at 182.
[23] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson v. Barrientos*, 926 F.2d at 482).
[24] *Id.*
[25] 42 U.S.C. § 1983.
[26] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[27] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[28] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[29] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[30]

## B. Eighth Amendment Conditions of Confinement Claims

### 1. Applicable Law

The Constitution does not require custodial inmates to be housed in comfortable prisons, but the Eighth Amendment's prohibition against cruel and unusual punishment requires prisoners to receive "humane conditions of confinement" and adequate food, shelter, clothing, and medical care.[31] An inmate's "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"[32] To establish a conditions of confinement claim under the Eighth Amendment, Plaintiff must establish (1) that the deprivation was sufficiently serious and (2) that the prison official possessed a sufficiently culpable state of mind.[33] A sufficiently serious act or omission must result in denial of the "minimal civilized measure of life's necessities."[34] For a failure to prevent harm claim, an inmate must show that the conditions posed a substantial risk of serious harm.[35] The second requirement, the culpable state of mind, necessitates a finding that the official(s) acted with deliberate indifference to inmate

---

[28] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).

[29] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[30] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).

[31] *Herman*, 238 F.3d at 664 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)) (internal quotations omitted).

[32] *Id*. at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).

[33] *Id*. (citing *Farmer*, 511 U.S. at 834).

[34] *Farmer*, 511 U.S. at 834.

[35] *Id*.

health and safety.[36]  Deliberate indifference requires a showing that the defendant officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[37]

"The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing society' and not the standards in effect during the time of the drafting of the Eighth Amendment."[38] The objective factor prong requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.[39]  There is clearly a point beyond which one's conditions of confinement are so egregious as to render them unconstitutional.[40]

The Court employs a "totality of the circumstances" test to assess Eighth Amendment claims based on prison conditions.[41]  Conditions of confinement may not establish a violation individually but may do so in combination with other conditions when those combined conditions have a mutually enforcing effect that produces the deprivation of a single identifiable human need, such as food, warmth, or exercise, for example, a low cell temperature at night combined with a failure to issue blankets.[42]  Even being forced to live in a filthy or unsanitary cell for some period of time, however, does not automatically violate the Constitution.[43]

---

[36] *Herman*, 238 F.3d at 664 (citing *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1990)).
[37] *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).
[38] *Gates v. Cook*, 376 F.3d 323, 332–33 (5th Cir. 2004) (quoting *Estelle v. Gamble*, 429 US. 97, 102 (1976)).
[39] *Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("In other words, the prisoner must show that the risk of which he complains is not one today's society chooses to tolerate.").
[40] *See, e.g.*, *Gates*, 376 F.3d at 338 (holding that confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (stating that continual conditions of "filthy, sometimes feces-smeared cells" may be unconstitutional).
[41] *Rhodes v. Chapman*, 452 U.S. 337, 347, 363 (1981) (Prison "[c]onditions, . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities").
[42] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citations omitted).
[43] *Taylor v. Stevens*, 946 F.3d 211, 219–20 (5th Cir. 2019).

### 2.  The Conditions Described by Conley are Not Sufficiently Serious to State a Viable Eighth Amendment Claim

The conditions described by Conley, while plainly not comfortable or pleasant, do not rise to a level of seriousness required to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."[44]  The courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."[45]

The presence of gnats in Conley's bunk, while undoubtedly frustrating, does not alone, or in combination with his other complaints, rise to the level of an Eight Amendment violation.[46] Moreover, Conley has not demonstrated anything more than *de minimis* injury[47]  from the bites, nor has he alleged denial of medical treatment.  Conley concedes that every time he requested antibiotic ointment from a nurse for gnat bites, she provided it to him.[48]  He also admits that he never had to escalate his medical treatment for the bites beyond antibiotic ointment.  Plaintiff has

---

[44] *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982).

[45] *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez,* 522 F.3d 556, 560 (5th Cir. 2008).

[46] *Smith v. Gusman*, No. 14-1154, 2015 WL 2066517, at *2 (E.D. La. May 4, 2015) (noting that the mere presence of pests, such as gnats, does not amount to a constitutional violation) (citing *Simmons v. Gusman*, No. 13-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *R&R adopted*, 2012 WL 1825302 (E.D. La. May 18, 2012); *Murray v. Edwards County Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1292 (D. Kan. Sept. 26, 2006)); *see also Ordon v. Jack*, No. 09-0164, 2009 WL 2044654, at *4 (W.D. La. July 7, 2009) (finding no more than *de minimis* harm or injury where Plaintiff had to sleep on a mattress on the floor for 12 nights, resulting in back injury and insect bites); *Harrison v. Smith*, 83 F. App'x 630 (5th Cir. 2003) (affirming dismissal of prisoner civil rights action alleging, *inter alia*, unsafe conditions due to failure to obtain extermination services for insects where plaintiff admitted he did not suffer any insect bites and his psychological reaction to the insects did not constitute an injury).

[47] *See Ordon*, 2009 WL 2044654, at *4.

[48] *Compare with Rodriguez v. Suffolk Cnty. Corr. Facility,* No. 08-2041, 2009 WL 20502 (E.D.N.Y. Han. 27, 2009) (denying motion to dismiss case where inmate alleged inadequate medical treatment for insect bite that caused swelling, fever and bruising). *See also* Wall v. Major, No. 07-1095, 2007 WL 3119605 (D.S.C. Oct. 22, 2007) (granting summary judgment against prisoner alleging denial of proper medical treatment for spider bite where plaintiff was seen by prison nurse and doctor upon request, medical provided a prescription, and plaintiff was transported to hospital after fainting).

not established that the presence of biting gnats was sufficiently serious nor that he was forced to live in inhumane conditions.[49]

Further, the presence of roaches on or near food trays on two occasions, while unquestionably unpleasant, did not present a serious risk of harm.   In combination with other, more severe conditions, a roach infestation can contribute to a plausible Eighth Amendment claim.[50] In this case, however, Conley has not set forth any facts suggesting such a serious infestation.  He testified that he saw roaches jump from food trays on two occasions in January and February 2023.  Importantly, Conley does not allege that he sustained a physical injury as a result of observing the roaches jump off of trays.  The presence of roaches on two occasions fails to state a constitutional violation.[51]

Nor has Conley stated a plausible claim regarding mold on the walls and in the showers of TPJ.  Federal courts have recognized that certain institutional problems such as dampness, mold,[52]

---

[49] *Severin v. Hunter*, No. 06-2780, 2007 WL 1592976, at *12 (E.D. La. May 30, 2007) ("As in other reported decisions concerning prisoners complaining about insect bites, this case must be dismissed.") (citing *Crow v. Cotten*, No. 302-745, 2002 WL 31697730, at *2 (N.D. Tex. Nov. 27, 2002); *Mack v. Prison Health Servs.*, 2002 WL 1808749, at *1 (N.D. Cal. Aug. 5, 2002) (internal citations omitted); *Robinson v. Milwaukee Secure Det. Facility*, No. 15-263, 2016 WL 3620770, at *2 (E.D. Wis. June 29, 2016) ("Absent any allegation that the itching and bites were severe or anything out of the ordinary, an itch from insect bites does not rise to the level of harm necessary to demonstrate unconstitutional conditions of confinement."); *Cook v. Leitheim*, No. 22-630, 2022 WL 3040342, at *2 (W.D. Mich. Aug. 2, 2022) (dismissing prisoner's § 1983 conditions of confinement claim for failure to state a claim where plaintiff slept on a floor that was unsanitary and full of insects that bit him for approximately 30 days); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (concluding that a prisoner's allegation that his cell was "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" fell short of demonstrating the existence of a substantial risk of serious harm); *see also Fryer v. Ledvora*, No. 14-9199, 2017 WL 36445, at *5 (N.D. Ill. Jan. 4, 2017) ("Courts have been reluctant to hold that a spider bite is a serious medical need.").
[50] *See Bienvenu v. Beauregard Par. Police Jury*, 705 F.2d 1457 (5th Cir. 1983), (holding that allegations of a cold, rainy, roach infested jail cell, with inoperative toilet facilities, stated a cause of action under the Eighth Amendment).
[51] *See Tilmon v. Chairman*, No. 21-4037, 2023 WL 5030677 (W.D. La. July 17, 2023) (granting summary judgment on conditions of confinement claim where plaintiff only alleged presence of cockroaches, bed bugs, and gnats) (citations omitted), *R. & R. adopted*, 2023 WL 5030092 (W.D. La. Aug. 7, 2023).
[52] The mere presence of mold in a prison setting does not render an inmate's confinement unconstitutional. *See, e.g., Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) ("the presence of black mold in living areas, eating areas, and shower areas" are "no more than a de minimis level of imposition with which the Constitution is not concerned.").

and stale air do not amount to a constitutional violation.[53]   Assuming that such conditions existed

and that Conley had symptoms or other irritations associated with mold at the jail, he has not

established that any of the defendants intended a risk of serious harm to his person or intentionally

ignored that risk.   Instead, he agrees that jail maintenance staff bleached the mold in his living

quarters on more than one occasion.[54]   To the surprise of no one who has experienced Louisianan

humidity, the mold eventually grew back, at which point maintenance staff bleached it again.

Conley also received cleanser once a week that could be used to clean the wall near his bunk.

Moreover, Conley has not alleged facts to indicate that the symptoms associated with his mold

exposure, i.e., a cough and immune deficiency, rise to the level of harm necessary under

§ 1997e(e).[55]   As such, Conley has not stated a constitutional violation.[56]

 Conley also claims that trash was not collected in accordance with the jail's policy.   Instead

of collecting trash three times per week, workers sometimes picked up the trash only once a week.

Conley does not allege that he suffered any injury from the weekly, instead of triweekly, trash

pickup.   While trash collection may have occurred less often than mandated by policy, where there

---

[53] *See, e.g., White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan. 16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).

[54] *Spears* testimony.

[55] *Compare with Smith v. Leonard*, 244 F. App'x 583, 2007 WL 2253484 (5th Cir. 2007) (unpublished) (holding that plaintiff alleged facts sufficient to preclude a determination that his Eighth Amendment claim was frivolous or failed to state a claim where plaintiff asserted that sheriff's refusal to remove allegedly toxic mold caused him to experience headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue).

[56] *See McCarty v. McGee*, No. 06-113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."); *Walston v. State Counsel for Offenders,* No. 07-2120, 2010 WL 3056657, at *5 ("Courts who have examined claims for mold in prison settings and complaints of generalized physical maladies such as those alleged here by plaintiffs, have found these and similar maladies insufficient to support an Eight Amendment conditions of confinement claim. . . .") (citing cases).

is no constitutional right imposed upon or physical harm alleged, there is no constitutional violation from the mere failure to comply with jail policies.[57]

Conley further claims that, when he was first incarcerated at TPJ, he had to sleep either on a metal bunk or the floor with only a piece of a mat while he waited for a bed to open up in one of the dorms due to overcrowding. Initially, overcrowding of inmates is not *per se* unconstitutional.[58] Further, prisoners have no right to an elevated bed.[59] And while a mattress might have been more comfortable, there is no constitutional right to comfort.[60] The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment."[61]

Conley indicated that he rolled the piece of mat and used it as a pillow to protect his head and had access to a restroom at all times. He slept in a two-person cell that had four inmates, so the newer inmates had to sleep on the floor. While no doubt uncomfortable and unpleasant, this temporary condition falls short of an Eight Amendment claim, as does the inconvenience or discomfort of having to sleep on a mat on the floor. Further, Conley was subject to these conditions only for a temporary period. After two months, when a bunk space opened up, Conley was provided a mattress on a bunk. Even if Conley could state a constitutional violation for this temporary condition, he has not presented any facts to suggest any actual injury from sleeping on

---

[57] *Barker v. Owens*, 277 F. App'x 482 (5th Cir. 2008) (failure to follow its own prison rules, regulations or procedures does not constitute a due process violation, without an independent constitutional violation) (citing *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir. 1995)); *Ruiz v. LeBlanc*, 643 F. App'x 358, 364 (5th Cir. 2016) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)); *Richardson v. Thornton*, 299 F. App'x 461, 463 (5th Cir. 2008) (citing *Myers*, 97 F.3d at 94).

[58] *Rhodes v. Chapman*, 451 U.S. 337, 347-50 (1981); *see also Burke v. Allison*, No. 08-1496, 2010 WL 3827942, at *4 (S.D. Miss. Sept. 24, 2010) ("That [plaintiff] had to sleep on the floor for a few days does not establish a constitutional violation.")

[59] *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (stating that the court was unaware of any authority for the proposition that the Constitution requires elevated beds for prisoners).

[60] *Talib v. Gilley*, 139 F.3d 211, 215 (5th Cir. 1998); *see also Eaton*, 2012 WL 2459398, at *3 (granting summary judgment against plaintiff because being forced to sleep on the floor with at first a piece of mat then a full mat did not constitute an Eight Amendment violation)

[61] *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004).

a piece of a mat for this two month period.[62]  Temporary discomfort does not implicate the Eighth

Amendment.[63]

Finally, Conley testified that, although he signed an admissions form reflecting that he

received a mat, towel, slippers, two changes of clothes, and soap, he only received one pair of

pants.  Prisoners are entitled to "basic human needs" such as food, clothing, medical care, and safe

and sanitary cleaning conditions.[64]  Conley states that he was provided with two shirts, a towel,

and one pair of pants, but not provided a second pair of pants, which he purchased from the

commissary.[65]  When a prisoner is provided basic necessities, including shower access and laundry

services, and he has the option to purchase supplies, a jail's failure to provide additional supplies

does not rise to the level of a conditions of confinement violation.[66]  Plaintiff testified that he had

shower access, he has not asserted insufficient laundering services, and he had the ability to (and

did) purchase another pair of pants. The fact that he was provided only one pair of pants is

insufficient, alone or in combination with the other conditions described, to establish a violation

of his Eighth Amendment rights.[67]

---

[62] Title 42 U.S.C. § 1997e specifically provides that prisoners are barred from recovering compensatory damages for mental or emotional injuries "unless there is a prior showing of physical injury...."  The "physical injury" required by § 1997e(e) must be "more than de minimis [sic], but need not be significant."  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar*, 112 F.3d at 193).

[63] *See Collins v. Gusman*, No. 07-211, 2008 WL 466464 (E.D. La. Feb. 13, 2008) (recommending dismissal of conditions of confinement claim where plaintiff articulated only a "short term" uncomfortable sleeping condition).

[64] *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021) (citing *Rhodes*, 452 U.S. at 347-48).

[65] *Spears* testimony.

[66] *Ruiz v. LeBlanc*, 643 F. App'x 358, 361-62 (5th Cir. 2016) (affirming dismissal of conditions of confinement claim based on alleged inadequate hygiene where plaintiff's clothing was only laundered on weekdays, and he lacked toothpaste for several months because he could still shower on weekends and could have purchased additional toothpaste); *see also Young v. Cain*, 760 F. App'x 251, 257 (5th Cir. 2019) (affirming dismissal of Eighth Amendment claim by plaintiff who was given only "a very very light fabric material," two undershirts, and two pairs of socks during fall and winter months).

[67] *See Bell v. Caruso*, No. 07-876, 2009 WL 654812 (W.D. Mich. Mar. 10, 2009) (the fact that prisoner only had one pair of pants and that, on days when his pants were at the laundry, he was forced to walk to the dining hall in long johns and shorts was not a grave deprivation sufficient to establish a violation of his Eighth Amendment rights).

Plaintiffs' claims about gnats, occasional roaches, mold, trash collection, one provided pair of pants, and temporary lack of a mattress do not, either individually or collectively, rise to a level of seriousness required to be considered a constitutional violation. Accordingly, his conditions of confinement claim should be dismissed with prejudice as frivolous and/or for failure to state a claim.

### C. Improper Defendant

Conley has improperly named the Tangipahoa Parish Jail as a defendant. First, the jail lacks the capacity to sue or be sued as required by FED. R. CIV. P. 17(b). An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits. FED. R. CIV. P. 17(b)(1). To possess capacity under Louisiana law, an entity must qualify as a "juridical person," which is defined as ". . . an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Louisiana, however, divides the responsibility for its parish jails. The parish is charged with its jails' physical maintenance, pursuant to LA. REV. STAT. § 15:702, and the sheriff of each parish has the duty to administer and operate the jails. LA. REV. STAT. § 15:704. The office of the sheriff is a constitutionally created office in Louisiana, existing separately from the parish government.[68] Thus, in Louisiana, jail facilities are not "legally empowered to do" anything independently of either the respective parish officials or the parish sheriff.[69]

In addition, § 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law.[70] Under federal law, a county or parish prison facility

---

[68] LA. CONST. art. 5 § 27; *see Langley v. City of Monroe*, 22-483 (La. App. 2d 6/19/91), 582 So. 2d 367, 368 (holding that the parish police jury, or government, could not be liable for injuries attributed to the sheriff).

[69] *See Roberts v. Sewerage & Water Bd.*, 92-2048 (La. 03/21/94), 634 So. 2d 341, 347.

[70] 42 U.S.C. § 1983; *see generally Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989) (holding that state officials are not "persons" acting in their official capacities under § 1983).

simply is not recognized as a "person" within the meaning of the statute.[71]  In Louisiana, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[72]

For these reasons, Conley's claims against the Tangipahoa Parish Jail must be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2), § 1915A(b); 42 U.S.C. § 1997e(c)(1).

**D.  <u>Supervisory Liability Claims- Individual Capacity</u>**

Grayer alleges that each of the individual defendants is liable because of their roles as "overseers" of the jail.  "Personal involvement is an essential element of a civil rights cause of action."[73]  To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[74]  Furthermore, there is no *respondeat superior* liability under section 1983.[75]  Thus, a supervisor cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* simply because other defendants were in his employ or under his supervision.[76]  Instead,

---

[71] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (adopting report and recommendation) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir. 1973)); *Cullen v. DuPage Cty.*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 13, 1999); *Whitley v. Westchester Cty. Corr. Facility Admin.*, No. 97-0420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

[72] *Douglas*, 567 F. Supp. 2d at 892; *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *4 (E.D. La. Aug, 10, 2015).

[73] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[74] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006).

[75] *Carter*, 2009 WL 2390808, at *3; *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983."); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.

[76] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

a plaintiff must establish that he suffered a constitutional violation or physical injury directly

resulting from an order, policy, or directive implemented by the supervisory officer to create

vicarious liability under § 1983.[77]

### 1. Conley fails to State Plausible Individual Capacity Claims against Warden Martin, Sheriff Edwards, and Parish President Miller for his Eighth Amendment Claims

Conley testified that he named Warden Martin, Sheriff Edwards, and Parish President

Miller as defendants because they were "overseers" of the facility.  He also stated, however, that

neither Martin, Edwards, nor Miller had any direct or personal involvement in most of the issues

raised, including the insects, bedding, mold, trash collection, or clothing supply.  Although each

of these defendants may have served as a supervisor in some capacity, that fact alone is insufficient

to render any of them liable for federal civil rights violations allegedly committed by a subordinate

under strict liability or vicarious liability theories.[78]  He also fails to allege a causal connection

between any act of these defendants and a constitutional deprivation or injury.

Without allegations of personal involvement, Conley has failed to state a claim against

Warden Martin, Sheriff Edwards, or Parish President Miller, thus his claims against them in their

---

[77] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *see also*; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference).

[78] *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *see Eason*, 73 F.3d at 1327 ("There is no *respondeat superior* liability under section 1983.").

individual capacities should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[79]

### E.  Law Library, Bible, and Reading Materials

Conley contends that he has been denied access to the law library and that TPJ inmates cannot not enter the law library unless placed there by jail personnel.  If he needs information, he must request same from the inmate who runs the library, who visits dorms to provide copies of paperwork.  Conley further indicates that he was not allowed to access books, magazines, or any other reading material.  Significantly, Conley testified that he did not have any pending civil or criminal proceedings for which he was seeking library access when he was denied an in-person visit to the library.  Nor did Conley indicate that he was ever denied copies of caselaw, pleadings or other legal materials by the jail librarian.

Complaints regarding lack of access to law libraries are generally considered under the more general right of access to the courts.[80]  In Conley's case, however, he has not alleged that lack of library access prejudiced his ability to demonstrate his position as a litigant.[81]  Instead, Conley appears to challenge only his lack of access to bibles, magazines, and other reading material, hence his claim is more appropriately analyzed under the First Amendment.[82]

### 1.  The Policy

Conley testified that Sgt. Shields told him that TPJ policy prohibits jail personnel from supplying bibles to inmates and forbids inmates from receiving bibles by mail.  Conley also

---

[79] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. P. 12(b)(6).
[80] *See Bounds v. Smith*, 430 U.S. 817, 825 (1977).
[81] See *Lewis v. Casey*, 518 U.S. 343, 356; *Every v. Jindal* 413 F. App'x. 725, 727 (5th Cir. 2011) (citing *Lewis*, 518 U.S. at 349-50; *Jones*, 188 F.3d at 325 (5th Cir. 1999)); *Cochran v. Baldwin*, 196 F. .App'x. 256, 257-58 (5th Cir. 2006) (citing *Lewis*, 518 U.S. at 350-51); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).
[82] *See Mills v. LeBlanc*, No. 21-30589, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022) (unreported) (noting that a prisoner's First Amendment right to be free from mail censorship not reasonably related to legitimate penological interests was implicated by prison's confiscation of novel, catalogues, and magazines mailed to prisoner).

testified that inmates could not have magazines, books, or other reading material according to policy. He filed a grievance about lack of access to a bible but never heard back.

### 2. Free Exercise Clause

To the extent Conley asserts that defendants have burdened the free exercise of religion by denying him access to a bible, he has failed to state a non-frivolous claim. To fall within the Free Exercise Clause's purview, a claimant must possess a sincere religious belief.[83] Based on his testimony that he is an ordained reverend and practicing Christian, Conley has plausibly stated such. An inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns.[84]

The test for evaluating the reasonableness of a prison policy is the same for both free exercise and first amendment claims; prison regulations that impinge on fundamental constitutional rights are reviewed under the deferential standard set forth in *Turner v. Saffley*, 482 U.S. 78 (1987). Under *Turner*, courts consider four factors[85] in deciding if the challenged censorship regulation is reasonable: (1) whether there is a sufficiently rational and non-arbitrary connection between the regulation and the prison's legitimate interest; (2) whether the inmate has alternative means of exercising the constitutional right; (3) whether an accommodation of the inmate would adversely affect others and "the allocation of prison resources"; and (4) "whether there are ready alternatives that could fully accommodate the prisoner's rights at *de minimis* cost

---

[83] *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972) (noting that "philosophical and personal ... belief does not rise to the demands of the Religion Clauses"); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1212 (5th Cir. 1991), *on reh'g*, 959 F.2d 1283 (5th Cir. 1992) (citation omitted) ("[T]he Free Exercise query is whether this particular plaintiff holds a sincere belief that the affirmation is religious."); *Ferguson v. Comm'r*, 921 F.2d 588, 589 (5th Cir. 1991) (per curiam) (citations omitted) ("The protection of the free exercise clause extends to all sincere religious beliefs.")).

[84] *Id.* (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

[85] *Turner*, 482 U.S. at 89-91; *see also Keys v. Torres*, 737 F. App'x 717, 719 (5th Cir. 2018) (applying *Turner* factors and holding that prison's rejection of firearm magazine under ordinance which prohibited publications containing information regarding the manufacture of weapons was reasonably related to the legitimate penological interests of safety and security).

to valid penological interests."[86]   For a free exercise claim, the critical question for *Turner* purposes is whether the prison officials' actions deny prisoners their free-exercise rights without leaving open sufficient alternative avenues for religious exercise."[87]   Here, Conley does not allege that he is prohibited from practicing his religion or unable to employ additional alternative means of exercising his religious beliefs.[88]   While Conley may not be able to study in the specific manner he desires, he has not been "deprived of all forms of religious exercise" and may freely observe his religious customs[89] through other means, such as prayer.  "The refusal to provide the demanded religious articles is well within the latitude in the administration of prison affairs which prison officials must be accorded."[90]   Accordingly, to the extent Conley raises a Free Exercise Clause claim, it should be dismissed under § 1915a as frivolous and/or for failure to state a claim upon which relief can be granted.

### 3.  First Amendment Right to be Free From Mail Censorship

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[91]   Rather, he must identify the policy or custom which allegedly

---

[86] *Mills v. LeBlanc*, No. 21-30589, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022) (quoting *Samford v. Dretke*, 562 F.3d 674, 679 (5th Cir. 2009) (citation omitted)

[87] *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 861 (citation omitted).

[88] *See Dominique v. Neal,* No 20-0341, 2020 WL 2476484, at *7 (E.D. La. Mar. 30, 2020), *R. & R. adopted*, 2020 WL 2473769 (E.D. La. . May 13, 2020).

[89] *See O'Lone*, 482 U.S. at 352.  *See also Welsh v. Correct Care Recovery Sols.*, No. 18-020, 2019 WL 11706176, at *17 (N.D. Tex. Apr. 24, 2019) (holding that the alleged denial of a bible, standing alone and for a brief time period, does not constitute a denial of the right to practice religion) (citing, e.g., *Al-Amin v. Donald*, 165 F. App'x 733, 739–40 (11th Cir. 2006) (affirming dismissal of prisoner's First Amendment free exercise claim where "[h]e did not expressly state a free exercise claim and did not refer to any specific constraints on his religious practice in his complaint"); *Tabor v. Coleman*, No. 18-1308, 2018 WL 6817033, at *4 (W.D. La. Dec. 3, 2018) (recommending dismissal of prisoner's claim that defendants deprived him of a Bible for thirty days, finding that prisoner's bare allegation was conclusory and did not disclose enough facts to state a plausible claim)), *aff'd in part, vac'd in part and remanded on other grounds*, 8845 F. App'x 311 (5th Cir. 2021).

[90] *Frank v. Terrel*l, 858 F.2d 1090, 1091 (5th Cir. 1988) (quotation marks omitted); *accord Mack v. Reynolds*, No. 797-170, 2000 WL 1808277, at *3 (N.D. Tex. Dec. 11, 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense.").

[91] *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).

caused the deprivation of his constitutional rights.[92]  Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority."[93]

While Conley has failed to state a non-frivolous Free Exercise Clause claim, he has pled sufficient facts to state a First Amendment censorship claim.  Conley testified that Sgt. Spears told him that TPJ has a policy prohibiting the supply of bibles to inmates.  When Conley asked if a family member could mail him a bible, Sgt. Spears told him that was likewise against policy. Conley then asked if his father could visit and bring a bible and was again denied, this time based on a COVID policy against visitors.  Conley then asked if he could check out a bible from the law library and was again denied.  He was also unable to obtain any reading material from the law library.

In *Beard v. Banks*, 548 U.S. 521, 527 (2006), the plaintiff challenged "a policy forbidding inmates all access to newspapers, magazines, and photographs . . . ."  The Supreme Court examined whether the policy or regulation was reasonably related to a legitimate penological interest.[94] Similarly, in *Mills v. LeBlanc*, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022), a plaintiff claimed that defendants confiscated "certain items shipped to him through the mail, including photographs, picture catalogues, a novel, and magazines." The Court explained that inmates "have a First Amendment right to be free from mail censorship not reasonably related to legitimate penological interests."[95]

---

[92] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.
[93] *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009).
[94] *Id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987)).
[95] *Id. See also Rodney v. Hedgemon*, No. 23-555, 2023 WL 5920110, at *3 & n.3 (W.D. La. Aug. 21, 2023) (citing *Pembroke v. Wood Cnty., Tex.*, 981 F.2d 225, 229 (5th Cir. 1993) ("[T]he arbitrary restriction of reading materials to one bible without showing a need for such a restriction based on prison security is an unacceptable infringement on the prisoners' First Amendment rights.") (abrogated on other grounds); *Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir.

Through his complaint, show cause response, and *Spears* testimony, Conley has identified a policy that appears to prohibit inmates from accessing reading materials (bibles included) altogether. He cannot obtain the book through the law library, prisoner personnel, mail, or drop off from a visitor. In other words, the policy effectively forbids inmates from receiving reading materials through the mail and does not, based on the facts pled, offer any alternative. At this stage, the court cannot evaluate each of the *Turner* factors because, despite Conley's purported efforts to obtain reading materials and challenge the policy through a grievance and conversations with sergeants, the policy rationale remains unknown. Without any proffered rationale, the court cannot analyze whether there is a "valid, rational connection" between the regulation and the legitimate governmental interest put forward to justify it."[96]

### 4. The Policymaker

To create vicarious liability under § 1983 over a supervisory officer such as Martin or Edwards in his individual capacity, Conley must establish that he suffered a constitutional violation or physical injury directly resulting from an order, policy, or directive implemented by the supervisory officer.[97] Likewise, to prevail on an official capacity claim, which is generally "another way of pleading an action against an entity of which an officer is an agent," [98]

> a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a

---

1986); *Mann v. Smith*, 796 F.2d 79 (5th Cir. 1986); *Bell v. Wolfish*, 441 U.S. 520, 551 (1979)), *R. & R. adopted*, 2023 WL 5918085.

[96] *Turner*, 482 U.S. at 89.

[97] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *see also*; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference).

[98] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

> plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[99]

Thus, municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights.

The policy must be the "moving force" behind the violation.[100] Also, "isolated unconstitutional actions by municipal employees will almost never trigger liability."[101] If there is no constitutional violation, the *Monell* claim fails. Conley has identified an official policy and alleged a violation of his First Amendment rights, but the identity of the party that promulgated the policy or custom remains unknown despite his efforts (i.e., whether this is a policy instituted by Warden Martin or Sheriff Edwards).

Though the policymaker's identity is unknown, it is clear that Conley's claims against Parish President Miller should be dismissed. Initially, unlike Warden Martin and Sheriff Edwards, Conley has not alleged any involvement of the parish president in the day-to-day operation of the jail, or the supervision of mail or library policies provided therein. As detailed above, Conley's claim against Parish President Miller in his individual capacity should be dismissed as frivolous, which would leave only official capacity claims against Miller. A claim against the parish president in his official capacity, however, is actually a claim against the entity he serves, i.e., Tangipahoa Parish. Given that Conley has already named Tangipahoa Parish as a defendant, any claim against Miller is duplicative and fails to state a claim for which relief can be granted.

---

[99] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).
[100] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578 (citations omitted).
[101] *Id*. (citations omitted).

Accordingly, this claim should proceed against only Tangipahoa Parish, Warden Martin, and Sheriff Edwards, until such time as the identity of the relevant policymaker is identified, at which point the claim may be addressed under *Turner*.

## IV.    <u>CONCLUSION</u>

Conley has failed to state a non-frivolous conditions of confinement claim based on his allegations of mold, insects, insufficient supplies, and failure to abide by the jail's trash collection policy.  Likewise, to the extent he alleges a Free Exercise Clause claim based on lack of bible access, he has failed to allege that he has been denied all avenues of practicing his religion.  Further, Conley's claims against Tangipahoa Parish Jail should be dismissed as he seeks relief against this improper defendant.  Conley's First Amendment claim regarding lack of access to reading materials via library, mail, or drop off based on a policy identified by Sgt. Spears, however, should be allowed to proceed for further factual development.

## V.    <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff Donald Conley Jr.'s 42 U.S.C. § 1983 claims against defendant Tangipahoa Parish Jail be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915, § 1915A and as applicable 42 U.S.C. § 1997e as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief from an immune defendant.

**IT IS FURTHER RECOMMENDED** that Plaintiff's 42 U.S.C. § 1983 claims against defendant Parish President Robbie Martin in his individual and official capacities be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous and for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff Donald Conley Jr.'s 42 U.S.C. § 1983 claims against defendants Warden Heath Martin and Sheriff Daniel Edwards in their individual capacities be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous and for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's conditions of confinement claims against Defendants Tangipahoa Parish, Warden Heath Martin, Sheriff Daniel Edwards, and Parish President Robbie Martin be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous and for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Free Exercise Clause claims against Defendants Tangipahoa Parish, Martin, Edwards, and Miller be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous and for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's 42 U.S.C. § 1983 claims against Defendants Tangipahoa Parish, Warden Heath Martin, and Sheriff Daniel Edwards alleging violation of his First Amendment right to be free from mail censorship without a legitimate penological purpose be allowed to proceed for further factual development.

New Orleans, Louisiana, this ____20th____ day of December, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

27